# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA

| | | |
|---|---|---|
| JEREMY RAY STACEY, | § | |
| | § | |
| *Plaintiff,* | § | No. _____ |
| | § | |
| ~V~ | § | JURY DEMANDED |
| | § | |
| CITY OF JASPER, | § | |
| | § | |
| LILLIAN MICHELE LOCKHART, and | § | |
| | § | |
| CODY PITTMAN, | § | |
| | § | |
| *Defendants.* | § | |

## <u>COMPLAINT</u>

PLAINTIFF, JEREMY RAY STACEY, by and through his attorney, Robin Ruben Flores, and complaining of Defendants, CITY OF JASPER, LILLIAN MICHELE LOCKHART, and CODY PITTMAN, will show the Court

### INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution by the Defendants.

2. Plaintiff also brings this action for violations of Tennessee state law by the individual Defendants, Lillian Michelle Lockhart ("Lockhart"), and Cody Pittman ("Pittman") (collectively "individual defendants").

3. This action is brought against the Defendant, City of Jasper ("City") based upon patterns and practices of the City.

~ 1 ~

## JURISDICTION AND VENUE

4. This Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343 since the claims are for violations of Federal law.

5. This Court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1357 as they arise from the same case and the same controversies.

6. Venue is proper in this Court, Chattanooga Division, pursuant to 28 U.S.C. § 1391(b) for the following reasons: All acts that give rise to this cause of action occurred in Marion County, Tennessee; the City is a political sub-division of the State of Tennessee; and Plaintiff believes that the individual defendants were residents of Marion County, Tennessee.

## THE PARTIES

7. At all relevant times, the Plaintiff was a citizen of the United States and a resident of the State of Tennessee. At the time of the events averred herein, the Plaintiff was a resident of Marion County, Tennessee.

8. At all times relevant to this cause of action, the City was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

9. At all times relevant to this cause of action, the City is responsible for the creation and maintenance of its law enforcement department identified and averred as the Jasper Police Department ("department")

10. The City provides rules and regulations for the operation of the department.

~ 2 ~

11.     The City finances the operations of the department.

12.     The department is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee.

13.     At all relevant times, the City, its department, and its law enforcement supervisory personnel, are and were responsible for the training, certification, supervision, discipline, hiring, and retention of its law enforcement employees and to ensure that is law enforcement employees search, seize, and criminally charge persons only with probable cause and pursuant to Tennessee law.

14.     At all relevant times the individual defendants had a duty to refrain from seizing and criminally charging persons without probable cause and to follow Tennessee law on arrests under Title 40, Chapter 7 of the Tennessee Code Annotated.

15.     At all times relevant to this cause of action, the City employed the individual defendants as law enforcement officers.

16.     At all times relevant to this cause of action the individual defendants acted under the color of their respective offices and under the color of law, statute, ordinance, regulation, custom, or usage of the City.

17.     Plaintiff brings this action against the City and against the individual defendants in their individual capacities.

### FACTUAL BASIS
### MUNICIPAL LIABILITY

18.     The City has a documented history of condoning misconduct of its police officer employees and of hiring officers with a history of misconduct.

~ 3 ~

19.     On August 5, 2023, Officers Derrick Long ("Long"), and Justin Graham ("Graham"), law enforcement officers of the department, conducted an unreasonable seizure of Samuel Hryncewiz ("Hryncewiz") wherein the two officers used excessive force on Hryncewiz.

20.     The incident was captured on video and widely disseminated on the internet and the Chattanooga area media outlets.

21.     The video recording of the incident with Hryncewiz showed Graham becoming upset with Hryncewiz when Hryncewiz objected to Graham's demand that Hryncewiz provide identification.

22.     The incident resulted in Graham using physical violence on Hryncewiz, which included Graham's use of fists to Hryncewiz's face, use of OC spray on Hryncewiz, and use of a taser on Hryncewiz who offered no physical violence to Graham or Long.

23.     The incident also included Graham throwing Hryncewiz face-first onto the pavement, and with Hryncewiz prone on the pavement Graham continued to strike the helpless Hryncewiz and needlessly twist Hryncewiz's leg.

24.     Long failed to intervene in Graham's assault on Hryncewiz, which resulted in severe injuries to Hryncewiz.

25.     Graham charged Hryncewiz with resisting arrest and assaulting a police officer.

~ 4 ~

26.     Rather than conduct a full investigation, the department's chief of police, Billy Mason ("Mason") complimented Graham and Long on Chattanooga area media outlets.

27.     The State of Tennessee dismissed the charges against Hryncewiz and the district attorney stated to FOX 17, WZTV in Nashville, Tn "Our office did not think there was a reasonable expectation of a conviction."

28.     Graham, while working as a deputy with the Marion County Sheriff's Office, was also involved in a matter wherein he falsely testified to seeing an incident between a Marion County man and two members of the State Drug Task Force.

29.     In the matter of State of Tennessee v. William E. Muir, Docket No. 11297, Marion County Circuit Court, Graham falsely testified during the jury trial of the case that he saw Muir assault Agent Charlie Rittenberry.

30.     However, Graham was in a position several yards away and on the other side of a barn, and thus could not have seen any claimed assault.

31.     A Marion County jury acquitted Muir of all charges.

32.     Despite Graham's past history of false testimony, the City hired Graham as a police officer.

33.     Despite Graham's false claims and blatant use of excessive force against Hryncewiz, the City failed to investigate the matter in any meaningful way, failed to discipline Graham and Long, and the chief of police actually complimented Graham and Long on media outlets.

~ 5 ~

34. On July 29, 2024, at the request of 12th Judicial District Attorney General Courtney Lynch, TBI agents began investigating allegations of misconduct of Lockhart while she was working as a police officer with the City.

35. During the investigation, TBI agents learned that Lockhart reported to work while intoxicated.

36. Further investigation revealed that Lockhart responded to calls for service while intoxicated and driving a Jasper police vehicle while she was armed with a firearm.

37. On October 1, 2024, a Marion County Grand Jury indicted Lockhart for driving under the influence and possession of a firearm while intoxicated.

38. Based on information and belief, the City did not terminate Lockhart until after she was indicted.

39. Additionally, the facts stated *infra*, reveal a lack of training and supervision by the City and its police command structure.

**FACTUAL BASIS**
**INCIDENT AT PLAINTIFF'S HOME**

40. On December 9, 2023, Lockhart arrived at Plaintiff's residence on an animal complaint made by Plaintiff's neighbor, Jared Kelly ("Kelly"). Kelly made the complaint to Marion County 911.

41. Plaintiff's home is located on Alton Drive.

42. Kelly told the 911 operator that the dogs came from a residence located on Woodland Avenue. At no time did Kelly ever say to the 911 operator that the dogs belonged to Plaintiff or came from Plaintiff's home.

~ 6 ~

43. Plaintiff was home with his family, putting up Christmas decorations.

44. Plaintiff answered the door, and Lockhart told Plaintiff that she was there on a courtesy call about Plaintiff's loose dogs.

45. Plaintiff told Lockhart that his dogs were not loose, but Lockhart insisted that the dogs belonged to Plaintiff.

46. At some point during the dialogue between Lockhart and Plaintiff, Lockhart became agitated, and she raised her voice at Plaintiff.

47. Lockhart demanded Plaintiff to provide his identification to her.

48. Plaintiff told Lockhart that since the situation was a courtesy call, he was done talking about the matter and was going back inside.

49. Plaintiff refused to provide his identification and told Lockhart that he did nothing wrong and since he was at his home would not provide his identification to Lockhart.

50. Plaintiff turned to go inside his home, and Lockhart grabbed Plaintiff by his arm and demanded that Plaintiff provide his identification to her.

51. Plaintiff pulled away from Lockhart, then Lockhart with her left hand grabbed Plaintiff's left arm and said: "I ain't done talking to you."

52. Plaintiff came back onto the front porch.

53. Lockhart called for "backup."

54. Kelly walked to the end of his driveway and called out to Lockhart and Plaintiff that it was not Plaintiff's dogs. Plaintiff told Lockhart, "see, I told you it wasn't my dogs."

~ 7 ~

55. Lockhart then approached Kelly, who reiterated that the dogs at issue did not belong to Plaintiff, and that Plaintiff had nothing to do with the dogs at issue. Kelly told Lockhart that his 911 call had nothing to do with Plaintiff's home.

56. At this point, Pittman and two Marion County deputies arrived.

57. Lockhart told Pittman that she had handled the matter, but that Plaintiff had pulled away from her.

58. Pittman said to the effect, "he's going to jail."

59. Pittman and Lockhart then went over to Plaintiff as he stood on his front porch. The two Marion County deputies stayed with Kelly.

60. Pittman walked up to Plaintiff and stated, "who pulled away from my officer."

61. Plaintiff replied, "I didn't."

62. Pittman handcuffed Plaintiff with Lockhart present.

63. Plaintiff's wife, Rebecca, had come out onto the porch and saw what was happening to her husband.

64. Rebecca called Marion County Sheriff Bo Burnett and told him what was happening and that two of his deputies were present.

65. Sheriff Burnett then directed the two deputies to leave the situation, and they complied.

66. Video of Rebecca's interaction with Lockhart reveals the following:

Lockhart:     When I am here on an investigative call, I must talk to the people that are here and you have to identify yourself no matter how pissy you are or how mad that makes you. He refused to do that and tried to walk back into the house, and that is all on video recording.

~ 8 ~

Rebecca (on phone call): Hey Bo…

Lockhart:     I don't work for Bo I work for Billy Mason.

Rebecca:      I don't care if you work for Billy or not.

Lockhart:     He don't have authority over me.

Rebecca:      He does have authority over you.

Lockhart (walking aggressively toward Rebecca):
              Lady if you want to keep running your mouth you can come with me too. Take your ass back … (video ends).

67.     Lockhart told Rebecca "take your ass back in the house or you're going to jail."

68.     At no time did Lockhart intervene in Pittman's actions. Rather, she lent her support to Pittman as noted in the prior averments.

69.     Lockhart charged Plaintiff with "resisting stop, frisk, halt" in an affidavit of complaint wherein she made the following false claims:

> Was on an investigative call in reference to a dog complaint. Above offender refused to identify himself and attempted to go back inside his home. I place my left hand on his left forearm and grabbed his left wrist with my right hand to bring him back outside. Offender was visibility agitated and loud.

70.     Nowhere in the document did Lockhart state that she too was loud and agitated. Nowhere in the document did Lockhart describe her own aggressive and threatening behavior toward Rebecca. Nowhere in the document did Lockhart disclose that she was on a "courtesy call" and had made the decision that the matter was resolved prior to Pittman's actions.

71. Lockhart also failed to disclose in the document that Pittman actually made the arrest, and that none of the events Lockhart claimed happened in Pittman's presence.

72. Lockhart transported Plaintiff to the Marion County Jail where he was soon released on his own recognizance.

73. The State of Tennessee soon, thereafter, dismissed the charge against Plaintiff.

74. Tennessee Code Annotated 40-7-103 does not authorize a custodial arrest for a misdemeanor that did not occur in the officer's presence. No exception under this statute applied in this matter.

75. Tennessee Code Annotated 40-7-118(b)(1) requires an officer to issue a citation in lieu of custodial arrest for a misdemeanor that did occur in the officer's presence. No exception under this statute applied in this matter.

76. At the time of this Complaint, Plaintiff is unaware of any investigation or discipline of Lockhart and Pittman by the City.

77. As a direct and proximate result of the unlawful actions of the defendants, Plaintiff suffered humiliation and embarrassment and was placed into a county jail.

## COUNT ONE:

### UNREASONABLE SEIZURE WITHOUT PROBABLE CAUSE
### (FOURTH AMENDMENT)

### VIOLATION OF CIVIL RIGHTS UNDER
### COLOR OF LAW 42 U.S.C. §1983

~ 10 ~

78.    Each paragraph of this Complaint is incorporated as if fully set forth herein against all Defendants.

79.    The individual defendants had no probable cause to seize the Plaintiff. Lockhart seized Plaintiff as he tried to re-enter his home. Pittman seized Plaintiff for an alleged crime that did not occur in his presence. There was no requirement for the Plaintiff or anyone else to "identify" themselves as claimed by Lockhart under the fact pattern in this case.

80.    No reasonable law enforcement officer would have acted in this matter.

81.    The individual defendants lent the authority of their respective offices to jointly engage in actions that deprived the Plaintiff of his right be from unreasonable seizure without probable cause.

82.    The seizure without probable cause was the direct and proximate cause of the Plaintiff's deprivation of his liberty and of his damages.

83.    The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

84.    The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by the individual defendants and sent a message that officer misconduct would not be met with serious consequences.

85.    The individual defendants acted under color of law and their acts and omissions deprived the Plaintiff of the right secured to him under the Fourth

Amendment to the United States Constitution to be free from seizures without probable cause.

86.    Plaintiff sues all defendants under this count.

### COUNT TWO:

**UNREASONABLE SEARCH WITHOUT PROBABLE CAUSE**
**(FOURTH AMENDMENT)**

**VIOLATION OF CIVIL RIGHTS UNDER**
**COLOR OF LAW 42 U.S.C. §1983**

87.    Each paragraph of this Complaint is incorporated as if fully set forth herein against Lockhart and the City.

88.    In this case, Lockhart demanded identification from Plaintiff without any lawful or apparent reason to believe that a crime had been committed. Thus, a Terry stop was not authorized. By preventing Plaintiff from re-entering his home, Lockhart effectively was in the beginning stages of an unlawful search of the Plaintiff and his residence as the incident happened on the curtilage of Plaintiff's home.

89.    The fact that Lockhart was at the wrong address and was informed of this by both the Plaintiff and Kelly (the person who called the police) further supports the claim that Lockhart's actions were unreasonable.

90.    No reasonable law enforcement officer would have acted in this matter.

91.    Lockhart's actions deprived the Plaintiff of his right be from unreasonable search without probable cause.

Case 1:24-cv-00356-CLC-CHS    Document 1    Filed 11/09/24    Page 12 of 27    PageID #: 12

92. The search was without probable cause and was the direct and proximate cause of the Plaintiff's deprivation of his liberty and of his damages.

93. The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

94. The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by Lockhart and sent a message that officer misconduct would not be met with serious consequences.

95. Lockhart acted under color of law and her acts and omissions deprived the Plaintiff of the right secured to him under the Fourth Amendment to the United States Constitution to be free from unreasonable searches without probable cause.

96. Plaintiff sues Lockhart and the City under this count.

## COUNT THREE:

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY MALICIOUS PROSECUTION

### VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW 42 U.S.C. §1983

97. Each paragraph of this Complaint is incorporated as if fully set forth herein against all Defendants.

98. Lockhart's false claims, under oath in an affidavit of complaint resulted in the Plaintiff defending against the charge of resisting arrest.

~ 13 ~

99. Lockhart and Pittman actively participated in the "investigation" and ignored direct evidence from Kelly that they were at the wrong residence and that the dogs at issue belonged to other persons.

100. Because of the criminal prosecution initiated by Lockhart's false claims in her affidavit of complaint, Plaintiff suffered a deprivation of liberty apart from the initial seizures of Plaintiff by the individual defendants.

101. No reasonable law enforcement officer would have acted in this matter.

102. Plaintiff's criminal prosecution was ultimately terminated in his favor on the resisting arrest charge.

103. The individual defendants lent the authority of their respective offices to jointly engage in actions that deprived the Plaintiff of his right to be from malicious prosecution without probable cause.

104. The malicious prosecution without probable cause was the direct and proximate cause of the Plaintiff's deprivation of his liberty and of his damages.

105. The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

106. The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by the individual defendants and sent a message that officer misconduct would not be met with serious consequences.

~ 14 ~

107. The individual defendants acted under color of law and their acts and omissions deprived the Plaintiff of the right secured to him under the Fourth and Fourteenth Amendments to the United States Constitution to be free from malicious prosecution without probable cause and without Due Process of Law.

108. Plaintiff sues all Defendants under this count.

## COUNT FOUR:

**VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION**

**PRIVILEGES AND IMMUNITIES CLAUSE**

**VIOLATION OF CIVIL RIGHTS UNDER
COLOR OF LAW 42 U.S.C. §1983**

109. Each paragraph of this Complaint is incorporated as if fully set forth herein against all Defendants.

110. The Fourteenth Amendment's privileges and immunities clause protects individuals from state/local actions that abridge the privileges or immunities of citizens of the United States.

111. In this case, Lockhart, acting as representative of the state, demanded identification from Plaintiff without reasonable cause, and Lockhart together with Pittman, arrested Plaintiff on the charge of resisting arrest.

112. The individual defendants acted under color of law and lent the authority of their respective offices to jointly engage in actions that was an abridgment of the Plaintiff's privileges or immunities, particularly his right to be free from unreasonable searches and seizures and his right to due process.

~ 15 ~

113. No reasonable law enforcement officer would have acted in this matter.

114. The abridgment in his matter was the direct and proximate cause of the Plaintiff's deprivation of his liberty, his right to be secure from unreasonable searches, and of his damages.

115. The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

116. The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by the individual defendants and sent a message that officer misconduct would not be met with serious consequences.

117. Plaintiff sues all Defendants under this count.

<u>COUNT FIVE:</u>

**VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION**

**DUE PROCESS CLAUSE**

**VIOLATION OF CIVIL RIGHTS UNDER
COLOR OF LAW 42 U.S.C. §1983**

118. Each paragraph of this Complaint is incorporated as if fully set forth herein against all Defendants.

119. The Fourteenth Amendment's Due Process Clause protects individuals from being deprived of life, liberty, or property without due process of law. In this

case, Plaintiff was unlawfully detained and arrested by the individual defendants, which is a deprivation of Plaintiff's liberty.

120. The individual defendants' actions were arbitrary and not based on any valid law enforcement purpose, as they were at the wrong address and Plaintiff was not the person who was the subject of Kelly's 911 call.

121. The individual defendants acted under color of law and lent the authority of their respective offices to jointly engage in actions that was an abridgment of the Plaintiff's right to Due Process.

122. No reasonable law enforcement officer would have acted in this matter.

123. The abridgment in this matter was the direct and proximate cause of the Plaintiff's deprivation of his liberty, his right to be secure from unreasonable searches and of his damages.

124. The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

125. The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by the individual defendants and sent a message that officer misconduct would not be met with serious consequences.

126. Plaintiff sues all Defendants under this count.

**COUNT SIX:**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

**VIOLATION OF CIVIL RIGHTS UNDER
COLOR OF LAW 42 U.S.C. § 1983**

127. Each paragraph of this Complaint is incorporated as if fully set forth herein against all Defendants.

128. In the manner more fully described above, the individual defendants' acts and omissions were void of any lawful purpose.

129. The individual defendants worked in unison to unlawfully seize Plaintiff without probable and to prosecute Plaintiff without probable cause despite their full knowledge derived from Kelly that they were at the wrong house and that Plaintiff's dogs were not the dogs at issue.

130. The individual defendants then concocted a false claim of resisting arrest in a weak attempt to justify their misconduct.

131. No reasonable officer would have acted in this manner.

132. The individual defendants acted under color of law, and lent the authority of their respective offices to jointly engage in actions that deprived the Plaintiff of his right to be from unreasonable search and seizure without probable cause, malicious prosecution, abridgment of his rights under the Immunities and Privileges Clause of the Fourteenth Amendment to the United States Constitution,

~ 18 ~

and abridgment of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution

133. The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

134. The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by the individual defendants and sent a message that officer misconduct would not be met with serious consequences.

135. Plaintiff sues all Defendants under this count.

## COUNT SEVEN:

### FAILURE TO INTERVENE
### (AGAINST INDIVIDUAL DEFENDANTS)

### VIOLATION OF CIVIL RIGHTS UNDER
### COLOR OF LAW 42 U.S.C. § 1983

136. Each paragraph of this Complaint is incorporated as if fully set forth herein against all Defendants.

137. Lockhart and Pittman had individual duties to intervene in the unlawful arrest of Plaintiff, to stop the other from seizing Plaintiff in the manner set forth in this Complaint, and from concocting false claims against the Plaintiff.

138. Instead, the individual defendants jointly and directly participated in the unreasonable seizure and malicious prosecution of the Plaintiff.

139. No reasonable officer would have acted in this manner.

~ 19 ~

140. The individual defendants lent the authority of their respective offices to jointly engage in actions that deprived the Plaintiff of his rights averred in this Complaint.

141. The failures to intervene in this matter were the direct and proximate cause of the Plaintiff's deprivation of his rights as averred herein and his damages.

142. The individual defendants acted under color of law and their acts and omissions, specifically for this Count their failures to intervene, deprived the Plaintiff of the right secured to him under the Fourth Amendment to the United States Constitution to be free from seizures without probable cause, to be free from malicious prosecution without Due Process of Law, to be free from abridgment of Plaintiff's rights secured to him under the Privileges and Immunities Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

143. Plaintiff sues the individual defendants under this count.

### COUNT EIGHT:

**VIOLATION OF THE DUE PROCESS
CLAUSE OF THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION BY
FABRICATION OF EVIDENCE**

**(LOCKHART and the CITY)**

**VIOLATION OF CIVIL RIGHTS UNDER
COLOR OF LAW42 U.S.C. §1983**

144. Each paragraph of this Complaint is incorporated as if fully set forth herein against Lockhart and the City.

145. Lockhart knowingly fabricated evidence by making false statements under oath that resulted in a criminal prosecution. Indeed, testimony has long been recognized as evidence in American Jurisprudence.

146. As a direct and proximate result of Lockhart's false testimony and false claims as averred in this Complaint, Plaintiff was arrested, fingerprinted, photographed, and housed in the Marion County jail on the charge of resisting arrest, a crime he did not commit.

147. As a further direct and proximate result of Lockhart's unconstitutional conduct, Plaintiff suffered the indignity and humiliation of the loss of his liberty especially while he was housed in jail.

148. Lockhart's fabricated evidence was the direct and proximate result of the continued criminal prosecution.

149. No reasonable law enforcement officer would have acted in this manner.

150. Lockhart acted under color of law and her intentional acts deprived Plaintiff of his right secured to him under the Fourth and Fourteenth Amendments to United States Constitution to not be deprived of his freedom by way of fabrication of evidence to secure criminal charges against the Plaintiff.

151. The City's past history of condoning Graham's misconduct with Hryncewiz, hiring Graham despite his history of perjured trial testimony, the lack of discipline in this matter, and the lack of training by the City on arrests and seizures of citizens reveals a deliberate indifference by the City.

152. The deliberate indifference of the City was the driving force of the deprivations inflicted upon the Plaintiff by Lockhart and sent a message that officer misconduct would not be met with serious consequences.

153. Plaintiff sues Lockhart and the City under this count.

### COUNTS NINE and TEN

### BATTERY AND ASSAULT
### (AGAINST INDIVIDUAL DEFENDANTS)

### TENNESSEE STATE LAW CLAIMS

154. Each paragraph of this Complaint is incorporated as if fully set forth herein against the individual defendants.

155. The individual defendants' actions were void of any proper purpose.

156. The individual defendants' physical restraint of Plaintiff constitutes an assault and a battery upon the Plaintiff's person.

157. No reasonable law enforcement officer would have acted in this manner.

158. The individual defendants' acts and omissions were the direct and proximate cause of Plaintiff's mental anguish and damages.

159. Plaintiff sues the individual defendants in their individual capacities in these Counts.

### COUNT ELEVEN:

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST INDIVIDUAL DEFENDANTS)

### TENNESSEE STATE LAW CLAIMS

160. Each paragraph of this Complaint is incorporated as if fully set forth herein against the individual defendants.

161. The individual defendants acted intentionally or recklessly and engaged in extreme and outrageous conduct that caused Plaintiff emotional distress.

162. No reasonable law enforcement officer would have acted in this manner.

163. The individual defendants' acts and omissions were the direct and proximate cause of Plaintiff's mental anguish and damages.

164. As a further direct and proximate result of the individual defendants' unconstitutional conduct, Plaintiff's constitutional rights were violated, and Plaintiff suffered the indignity and humiliation of the loss of his liberty especially while he was housed in a jail.

165. Plaintiff sues the individual defendants in their individual capacities in this Count.

### COUNT TWELVE:

#### FALSE ARREST AND FALSE IMPRISONMENT
#### (PITTMAN)

#### TENNESSEE STATE LAW CLAIMS

166. Each paragraph of this Complaint is incorporated as if fully set forth herein against the individual defendants.

167. Pittman was prohibited from making a custodial arrest of the Plaintiff for a misdemeanor that did not occur in his presence. No exception to that law existed in this matter.

168. For argument's sake, even if Pittman *did* see a misdemeanor in his presence, he was required by Tennessee statute to issue a citation to the Plaintiff in lieu of custodial arrest.

169. No reasonable law enforcement officer would have acted in this manner.

170. Pittman's acts and omissions were the direct and proximate cause of Plaintiff's mental anguish and damages.

171. As a further direct and proximate result of the individual defendants' unconstitutional conduct, Plaintiff's constitutional rights were violated, and Plaintiff suffered the indignity and humiliation of the loss of his liberty especially while he was housed in a jail.

172. Plaintiff sues Pittman in his individual capacity in this Count.

### <u>COUNT THIRTEEN:</u>

**MALICIOUS PROSECUTION**
**(AGAINST INDIVIDUAL DEFENDANTS)**

**TENNESSEE STATE LAW CLAIM**

173. Each paragraph of this Complaint is incorporated as if fully set forth herein against the individual defendants.

174. Pittman initiated a criminal prosecution of the Plaintiff, and Lockhart was an active partner in the misconduct. Indeed, Lockhart was the author of the false affidavit of complaint and at least a complaining witness.

175. Lockhart's false claims, under oath in an affidavit of complaint resulted in the Plaintiff defending against the charge of resisting arrest.

176. The individual defendants actively participated in the "investigation" and ignored direct evidence from Kelly that they were at the wrong residence and that the dogs at issue belonged to other persons.

177. Because of the criminal prosecution initiated by Lockhart's false claims in her affidavit of complaint, Plaintiff suffered a deprivation of liberty apart from their initial seizure of Plaintiff.

178. No reasonable law enforcement officer would have acted in this matter.

179. Plaintiff's criminal prosecution was ultimately terminated in his favor on the resisting arrest charge.

180. Plaintiff sues the individual defendants in their individual capacities in this Count.

### <u>COUNT FOURTEEN:</u>

**CIVIL CONSPIRACY
(AGAINST INDIVIDUAL DEFENDANTS)**

**TENNESSEE STATE LAW CLAIMS**

181. Each paragraph of this Complaint is incorporated as if fully set forth herein against the individual defendants.

182. The individual defendants acted jointly and in concert with each other to commit the state torts as set forth herein.

183. No reasonable law enforcement officer would have acted in this matter.

184. Plaintiff sues the individual defendants in their individual capacities in this Count.

### COUNT FIFTEEN:

**NEGLIGENCE**
**(AGAINST INDIVIDUAL DEFENDANTS)**

**TENNESSEE STATE LAW CLAIMS**

185. Each paragraph of this Complaint is incorporated as if fully set forth herein against the individual defendants.

186. The individual defendants had a duty to Plaintiff to properly investigate the call for service by Kelly. Pittman also had a duty to be fully aware of the statutes that prohibited custodial arrests for misdemeanors that did not occur in his presence or to issue a citation in lieu of custodial arrests.

187. These omissions were the direct and proximate cause of Plaintiff's damages.

188. Plaintiff sues the individual defendants in their individual capacities in this Count.

### RELIEF REQUESTED

**WHEREFORE**, the Plaintiff requests relief as follows:

~ 26 ~

[1].  An award of nominal, compensatory, and presumed damages for the violation of Plaintiff's constitutional rights and all state causes of action in the amount of ONE MILLION DOLLARS as to all Defendants;

[2].  An award of punitive damages in the amount of TWO MILLION DOLLARS as to the individual defendants;

[3].  Awarding Plaintiff his attorney and expert witness fees and all other costs of litigation pursuant to 42 U.S.C. §1988, and under other applicable law;

[4].  Pre-judgment and post judgment interest;

[5].  The right to conform the pleadings to the proof and evidence presented at trial; and

[6].  Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to FED. R. CIV. P., Rule 38(b) on all issues so triable.

Respectfully submitted,

By: /s/ *Robin Ruben Flores*

**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN  37411
O: (423) 267-1575
F: (423) 267-2703
robin@robinfloreslaw.com

~ 27 ~